# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | | |
|---|---|---|
| STEPHEN RICHARD MAYES, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | NO. 1:19-cv-00001 |
| HEATHER BANKS, | ) ) | JUDGE CAMPBELL |
| Defendant. | ) ) | |

## MEMORANDUM AND ORDER

Plaintiff Stephen Richard Mayes, an inmate of the South Central Correctional Facility (SCCF) in Clifton, Tennessee, has filed a pro se complaint under 42 U.S.C. § 1983 (Doc. No. 1) along with an application for leave to proceed in forma pauperis (IFP) (Doc. No. 2). He has also filed a motion to amend his complaint (Doc. No. 5) and an "Emergency Motion for Temporary Restraining Order and Preliminary Injunction" (Doc. No. 7).

The case is before the Court for ruling on these motions and for initial review pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

**I.     Application to Proceed IFP**

Under the PLRA, 28 U.S.C. § 1915(a), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee of $350.00 required by 28 U.S.C. § 1914(a). Because it is apparent from Plaintiff's IFP application that he lacks the funds to pay the entire filing fee in advance, his application (Doc. No. 2) is **GRANTED**.

Pursuant to 28 U.S.C. §§ 1915(b) and 1914(a), Plaintiff is nonetheless assessed the $350.00 civil filing fee. The warden of the facility in which Plaintiff is currently housed, as custodian of

Plaintiff's trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10.00. 28 U.S.C. § 1915(b)(2). Payments shall continue until the $350.00 filing fee has been paid in full to the Clerk of Court. 28 U.S.C. § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the South Central Correctional Facility to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 801 Broadway, Nashville, TN 37203.

II.     **Initial Review of the Complaint**

    A.     **PLRA Screening Standard**

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, Section 1915A provides that the Court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in Section 1915(e)(2)(B) are identified. Under both statutes, this initial review

of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the Court must view the complaint in the light most favorable to Plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

### B.  Section 1983 Standard

Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the

Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

### C. Allegations and Claims of the Complaint

Plaintiff alleges that on September 28, 2018, he went to medical complaining of chest pain and was seen by Charge Nurse Heather Banks, RN, who ordered an EKG. (Doc. No. 1 at 5.) The EKG results showed "an inferior infarct, which is a heart attack." (*Id.*) Although Plaintiff's medical records showed that he had a history of a previous heart attack which necessitated four stents, Nurse Banks did not send Plaintiff to the emergency room. (*Id.* at 5, 6.) She later told Plaintiff that "cardiology is not my thing." (*Id.*)

On November 25, 2018, Plaintiff asked a correctional officer to be taken to medical on an emergency basis, due to chest pain that had not been relieved after taking three nitroglycerin tablets. (*Id.* at 5–6.) The primary care provider at SCCF, Sharee Dean, APN, had instructed Plaintiff to come to medical for an EKG if he had chest pain that was not relieved by three nitroglycerin tablets taken five minutes apart. (*Id.* at 6.) However, Nurse Banks, the charge nurse responsible for determining if the requested emergency sick call was necessary, declined to approve Plaintiff's request for emergency sick call on that day. (*Id.*)

Plaintiff claims that Nurse Banks was deliberately indifferent to his chest pain by denying him emergency evaluation at medical "and for not having the knowledge to interpret EKGs and the proper knowledge of how to assess and treat inmates with a significant cardiac history[.]" (*Id.*) He claims that he is now in need of a heart transplant. (*Id.*) Plaintiff states that his most recent test shows that his heart is only pumping at 49% and that he has now been diagnosed with heart failure. (*Id.* at 6–7.) Plaintiff alleges that he is often short of breath and that he began experiencing weakness when he reported to Nurse Banks on September 28, 2018. (*Id.* at 7.) He claims that Nurse

Banks, "being the charge nurse and a licensed registered nurse in Tennessee, is required to have the skill and training to deal with any emergency within the scope of practice for a registered nurse." (*Id.*) Plaintiff claims that "Nurse Banks' deliberate indifference is obvious by her not keeping her skills at an acceptable level, and her not being able to interpret 12-lead EKGs is unacceptable." (*Id.*)

As relief, Plaintiff seeks a temporary restraining order/preliminary injunction and an award of compensatory and punitive damages. (*Id.* at 5.)

In his motion to amend, Plaintiff states that he is seeking "to amend motion for temporary restraining order/preliminary injunction" because he is being retaliated against for filing his complaint. (Doc. No. 5 at 1.) He alleges that he was seen by Nurse Banks in medical on January 16, 2019, when he presented with chest pain. (*Id.* at 1–2.) He alleges that Nurse Banks stated, "well your blood pressure's fine, nothing's wrong with you," and denied him an EKG. (*Id.* at 1.) Plaintiff alleges that, "[a]fter leaving the plaintiff in the ER in medical, the defendant stated in a[n] extremely loud voice, "I hate his ass!" (*Id.* at 2.) Plaintiff was given a bottle of nitroglycerin tablets, and his chest pain was relieved after taking one tablet. (*Id.*) He claims that Nurse Banks and other nurses acted with deliberate indifference and in retaliation when they denied him a 12-lead EKG, which "takes less than 5 minutes to perform and is a nationally used standard of care[.]" (*Id.* at 2–3.) Plaintiff's amended request for relief seeks an immediate transfer to either the Lois M. DeBerry Special Needs Facility or the Riverbend Maximum Security Institution, an order restraining any further retaliatory acts, and an order requiring the Tennessee Department of Correction to have him evaluated by a board-certified cardiologist. (*Id.* at 3.)

D.  **Analysis**

As an initial matter, Plaintiff is entitled to amend his complaint once as a matter of course within 21 days of serving it, pursuant to Federal Rule of Civil Procedure 15(a)(1)(A). Accordingly, the Court has considered the contents of Plaintiff's motion to amend (Doc. No. 5) in conducting this initial review. The motion itself, being unnecessary, will be denied as moot.

1. **Deliberate Indifference Claim**

Plaintiff's claim for denial of appropriate medical care while incarcerated invokes his Eighth Amendment rights. "Eighth Amendment jurisprudence clearly establishes that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain that is violative of the Constitution." *Darrah v. Krisher*, 865 F.3d 361, 367 (6th Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 105 (1976)) (internal quotation marks omitted). To succeed in bringing a deliberate indifference claim in the medical context, Plaintiff must allege the deprivation of a "sufficiently serious" medical need by a defendant who acted with a "sufficiently culpable state of mind." *Darrah*, 865 F.3d at 367–68 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 570 (6th Cir. 2013). Plaintiff's cardiac condition presents a sufficiently serious medical need for Eighth Amendment purposes.

The state of mind described by "deliberate indifference" is demonstrated not by mere medical negligence, but only when an official knows of and disregards an excessive risk to the inmate's health or safety. *Farmer*, 511 U.S. at 836–37. "[N]egligence or negligent medical

6

treatment are not actionable theories of liability under 42 U.S.C. § 1983." *Boldon v. Claiborne Cnty. Det. Ctr.*, No. 3:16-CV-441-TWP-HBG, 2017 WL 4158612, at *6 (E.D. Tenn. Sept. 19, 2017) (citing *Daniels v. Williams*, 474 U.S. 327, 328–331 (1986) (finding that a "mere lack of due care" is not constitutionally actionable); *Estelle*, 429 U.S. at 106 (explaining that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner")). Thus, there is a distinction between cases where the complaint alleges a complete denial of medical care and cases challenging the adequacy of the care received: "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

Here, Plaintiff does not allege a complete denial of medical care, but clearly challenges the adequacy of the care he has received. He alleges that Nurse Banks ordered an EKG on September 28, 2018 in response to his complaints of chest pain, and that he was subsequently provided with nitroglycerin tablets. Although Nurse Banks allegedly declined to approve an emergency sick call request on November 25, 2018, she is not alleged to have denied Plaintiff treatment altogether on that date. While she is alleged to have spoken ill of Plaintiff on January 16, 2019, Nurse Banks explicitly denied Plaintiff an EKG on that date based upon his blood pressure readings, and apparently did not interfere with his being seen on an emergency basis by a different provider, who prescribed medicine that relieved Plaintiff's pain.

While Plaintiff disagrees with Nurse Banks's decision not to order a repeat EKG, a prisoner's difference of opinion regarding treatment does not rise to the level of an Eighth Amendment violation. *Estelle*, 429 U.S. at 107. Nor are prisoners entitled to the best medical treatment available. *Bemer v. Corr. Med. Servs.*, No. 10-12228, 2012 WL 525564, at *7 (E.D.

Mich. Jan. 27, 2012) (quoting *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir.1978)). Plaintiff received an initial EKG, nitroglycerin tablets to treat his chest pain, blood pressure checks, and other cardiovascular testing that apparently established heart failure. His dissatisfaction with Nurse Banks's clinical skills and his appeal to the "national standard of care" for diagnosing cardiac problems make clear that Plaintiff is essentially challenging her medical judgment and claiming medical malpractice rather than deliberate indifference. Because such a claim does not involve a constitutional violation, *Estelle*, 429 U.S. at 106, it cannot be maintained in this action under Section 1983.

### 2. Retaliation Claim

Plaintiff also claims retaliation in the wake of filing his complaint in this Court. A claim of retaliation under the First Amendment has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (quoting *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)). As to the first element, Plaintiff's filing of this lawsuit is conduct protected by the First Amendment.

However, while Plaintiff claims that the denial of an EKG on January 16, 2019, was in retaliation for the filing of this lawsuit, it appears that the treatment he received from Nurse Banks that day was no different than the treatment (or lack thereof) which led him to file the complaint in this case; indeed, Plaintiff characterizes her conduct as both "continued deliberate indifference and retaliatory acts[.]" (Doc. No. 5 at 2.) The Court finds that neither claim has been adequately alleged. Nurse Banks's alleged conduct on January 16, 2019—declining to order an EKG based

on Plaintiff's blood pressure but leaving him for emergency care in the medical unit—is not the sort of adverse action which would deter a person of ordinary firmness from continuing to prosecute this lawsuit. *Cf. Hagan v. Southers*, No. 1:13-CV-2731, 2016 WL 4264380, at *9–10 (M.D. Pa. Aug. 12, 2016) ("Just as we have found that Hagan's own interpretation of his treatment plan and the mental health services rendered to him could not support a claim for deliberate indifference, we likewise find that Hagan's similar assertions cannot support a claim that Dr. Dolphin's continued treatment of him constituted 'adverse action' necessary to support a claim for First Amendment retaliation."). Accordingly, Plaintiff fails to state a plausible First Amendment retaliation claim.

## III. Emergency Motion for Injunctive Relief

Plaintiff reasserts his immediate need for diagnostic testing in his recently-filed motion for emergency injunctive relief (Doc. No. 7), wherein he claims to be in imminent danger of a fatal heart attack. He claims that the likelihood of a heart attack would be confirmed by a 12-lead EKG, but that the test is being withheld because he only experiences chest pain without other symptoms such as vomiting, shortness of breath, or diaphoresis. (*Id.* at 1–3.) He again seeks transfer to a different facility, after a more immediate "transport to Centennial Medical Center for proper testing and interventions if needed." (*Id.* at 4.)

However, "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held," *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981), and the decision as to whether an emergency injunctive order should issue is based on consideration of, e.g., "whether the movant has a strong likelihood of success on the merits." *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). For the reasons already discussed in the initial review of Plaintiff's

pleadings, his constitutional claims under Section 1983 are without merit. Accordingly, Plaintiff's separate motion for emergency injunctive relief—based on the same allegations of unconstitutional conduct—will be denied.

## IV. Conclusion

For the reasons given above:

Plaintiff's application to proceed IFP (Doc. No. 2) is **GRANTED**, and the $350.00 filing fee is **ASSESSED** in accordance with this Order;

Plaintiff's motion to amend his complaint (Doc. No. 5) is **DENIED as moot**, and his Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 7) is **DENIED**; and,

Plaintiff's complaint is **DISMISSED** for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

This Order constitutes the final judgment in this action pursuant to Federal Rule of Civil Procedure 58.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE